THE STATE EX REL. C. REISS COAL COMPANY, Respondent, vs. BORN, Appellant.

*October 27 — November 16, 1897.*

*Municipal corporations: Sheboygan city charter: Distribution of powers: Mandamus to mayor.*

1. Notwithstanding the provision of the charter of the city of Sheboygan (Laws of 1887, ch. 124, tit. V, sec. 5), that the board of public works shall superintend the dredging of the rivers within the city, yet the provisions of tit. IV, secs. 1, 2, which vest in the mayor and council general municipal powers, and give to the common council the control of the city finances; and of tit. VII, sec. 4, that the dredging of the Sheboygan river shall be done by the city, and the board of public works shall do it when ordered by the council; and of tit. IV, sec. 4, that all accounts creating a charge against the city shall be passed upon by the council; and of tit. IV, sec. 6, that the council may by a two-thirds vote pass an appropriation over the mayor's veto, confer ample power upon the city council to ratify, as against the mayor's veto, the act of its own committee on harbors and bridges in contracting for and causing the removal of a bank which had suddenly accumulated in the Sheboygan river, and to appropriate money to pay for the same.

2. The provision of tit. IV, sec. 6, of the charter gives such an appropriation the force of a law of the corporation, and the mayor of the city may be compelled by *mandamus* to sign a warrant for an appropriation so passed, the act of signing being merely a ministerial act.

APPEAL from an order of the circuit court for Sheboygan county: N. S. GILSON, Circuit Judge. *Affirmed.*

The relator's petition for a *mandamus* alleged, in effect, the following facts:

In May, 1895, and prior thereto, there was in the Sheboygan river, within the city limits, a bank or bar which prevented the navigation of the river by vessels and boats carrying merchandise to the dock along the river, and the same had to be removed at once, to prevent vessels from running aground thereon. The committee of the common council on harbors and bridges requested and directed the relator to dredge out the river or bar to a like depth with the rest of the river at that place. The relator, accordingly, at once caused the bank or bar to be dredged out under the supervision of such committee, to such like depth. The expense of doing such dredging was $112.07, which the relator actually expended in doing such dredging, and which dredging was reasonably worth that sum. The relator presented its claim, in writing, for said sum, to the mayor and common council of the city, at a regular meeting thereof, May 4, 1896. Such claim was by the mayor and common council referred to the committee on harbors and bridges. On July 16, 1896, the committee made its report, in writing, to the mayor and common council, and recommended the payment thereof. Such report was then and there accepted and adopted by the mayor and common council by a vote taken by ayes and noes, and the order of the committee directing the relator to do such dredging was thereby ratified and confirmed. At said meeting of the mayor and common council a resolution was introduced, of which the following is a copy: "Be it resolved by the mayor and common council of the city of Sheboygan, that the sum of one hundred and twelve and $\frac{7}{100}$ dollars be, and the same is hereby, appropriated out of the bridge and harbor fund for the payment of the bill of the *C. Reiss Coal Co.*, for dredging."

Said resolution was then and there read; but a vote thereon was postponed until the next regular meeting thereof, held August 3, 1896. At said meeting the resolution was again read before the mayor and common council, and adopted and passed by a vote taken thereon by ayes and noes. On August 5, 1896, the resolution was duly certified by the city clerk, and presented to the mayor for his approval. It was returned to the clerk without the signature of the mayor, together with his objections thereto, stated in writing, August 8, 1896. Said objections were submitted by said clerk to the common council at its next regular meeting, August 17, 1896. The objections were duly entered upon the journal of the common council, and the common council then and there proceeded to reconsider the matter, and the resolution was again passed, the veto of the mayor notwithstanding, by a vote taken by ayes and noes, there being eleven ayes against four noes; and the resolution was then and there declared passed over the mayor's veto by two-thirds majority of all the members of the common council. The same was then duly published in the official newspaper of the city, August 25, 1896.

There then was a fund in the hands of the treasurer of the city designated by law as the bridge and viaduct fund. Said fund had always been designated on the books of the treasurer and by the common council as the bridge and harbor fund, and is still so designated. There was sufficient money in the treasury of the city, not otherwise appropriated, to pay the said claim. Said fund is by law under the control of the common council. It was made the duty of the mayor and city clerk to draw, sign, and issue to the relator an order, in writing, directing the treasurer to pay to it the sum so allowed and appropriated for the payment of said claim; and it was the duty of the comptroller to countersign such order. There was no other way in which the relator could obtain the payment of such claim from the city, except by

the presentation of such order, duly signed by said officers, to the treasurer. Such order had been made and signed by the city clerk; and the relator had demanded of the mayor to sign such order, but he had refused and neglected to sign the same, and the relator had no other remedy at law to enforce the payment of said sum.

Wherefore the relator prayed that a writ of *mandamus* issue, requiring and commanding the mayor to sign and issue said order for the sum so allowed and appropriated to it.

The mayor thereupon demurred to the alternative writ of *mandamus*, and moved to quash the same, on the ground that no reason in law was stated in the petition for the same. On the hearing, the court ordered that the demurrer and motion to quash be, and the same were thereby, overruled; and that the mayor pay to the relator $10 costs on such motion and demurrer; and that he have leave to make a return to the alternative writ of *mandamus* within twenty days after the service of such order on him, if he should be so advised; and that, in case of failure, such further proceedings should be had in the matter as might be provided by law; and that a peremptory writ of *mandamus* be then issued without delay. From such order the mayor brings this appeal.

For the appellant the cause was submitted on the brief of *C. A. Dean.*

*Paul T. Krez,* for the respondent.

CASSODAY, C. J.   It is contended that the common council had no jurisdiction to allow the claim. This is put on the ground that the board of public works is by the charter (ch. 124, Laws of 1887) required to take charge and special superintendence of all work for the deepening, widening, or dredging of the rivers within the city, and shall have power to make contracts therefor as therein prescribed, and shall perform all the duties therein required, "and such other duties as the common council may from time to time require" (sec.

5, tit. V); and that all work, except as otherwise provided therein, chargeable to any of the several ward or city funds, shall be let by contract to the lowest bidder, in the manner therein provided; and that all supplies or materials, exceeding $100, shall, when practicable be purchased by the board by contract so let; and that "all accounts for such work or for the furnishing of such materials shall, before being allowed by the common council, be audited by the comptroller, and all such accounts for work done or materials furnished under the supervision of the board of public works shall be certified by them before being audited" (sec. 15, tit. V). But the charter further provides, in effect, that the city of Sheboygan shall have the general powers possessed by municipal corporations at common law, and, in addition thereto, shall possess the powers hereinafter specifically granted, and shall be capable of contracting and being contracted with, of suing and being sued, of pleading and being impleaded, in all the courts of law and equity (sec. 1, tit. I); that such government be vested in the mayor and common council; that the common council shall have the management and control of the finances and of all the property of the city, except as otherwise provided (secs. 1, 2, tit. IV); that the docking and dredging of the Sheboygan river in said city opposite any street or public grounds abutting thereon, and the dredging of the middle part or ground of said river further than thirty feet from either dock line, shall be done by the city; that the board of public works, subject to the approval of the common council, shall have power, and are hereby authorized, and it shall be their duty when ordered thereto by the common council, without petition thereto in that behalf, to cause the said river or any portion thereof to be docked and dredged (sec. 4, tit. VII); that all accounts and regulations appropriating money or creating any charge against any of the funds of said city shall be referred to appropriate committees, and shall only be passed or acted upon by the com-

mon council at a subsequent meeting (sec. 4, tit. IV); that every appropriation which shall have been duly passed by the common council, before it shall take effect and within ten days after its passage, shall be duly certified by the city clerk and presented to the mayor for his approval; that, if the mayor approve of the same, he shall sign it; if not, he shall return it within ten days, with his objections thereto stated in writing, to the city clerk, who shall submit such objections to the common council at their next regular meeting thereafter, and such objections shall be entered upon their journal, and the common council shall proceed to reconsider the matter; and if, after such reconsideration, two thirds of all the members elect shall vote to pass the said appropriation, it shall take effect and be in force as a law of the corporation; otherwise it shall be null and void (sec. 6, tit. IV).

There appears to have been a necessity for removing the bank or bar (which apparently had suddenly accumulated in the river) immediately, for the convenience of commerce and in order to facilitate the landing of boats and vessels daily expected to arrive at the docks. The work was done by the relator at the request and under the direction and supervision of the standing and permanent committee of the common council known as the "Committee on Harbor and Bridges." The proceedings in presenting and allowing the account for the work, by the common council, seem to have been regular, and in the manner prescribed by the charter. The provisions of the charter referred to gave the common council ample power to ratify such action of its committee, and to appropriate money to pay for the same. The mayor fully exhausted his discretionary functions in relation to the matter when he vetoed the appropriation. But when it was passed by the common council over his veto, as prescribed by one of the provisions of the charter referred to, then, as therein provided, the appropriation took effect and became "in force as a law of the corporation."

It thereupon became the duty of the mayor to obey that law, and the performance of that duty was purely ministerial. *State ex rel. Van Vliet v. Wilson*, 17 Wis. 687; *Joint Free High School Dist. v. Green Grove*, 77 Wis. 537; *Waupaca Co. v. Matteson*, 79 Wis. 67. The objection to making the appropriation effectual is made by the mayor, and not by the city.

The trial court very properly overruled the demurrer and motion to quash, with costs.

*By the Court.*— The order of the circuit court is affirmed.